Good morning, Your Honors. Catherine Chaney on behalf of Mr. McDowell. Can you point that microphone at your mouth? Yes. Thank you. It's a little bit directional. We're asking this Court to reverse Mr. McDowell's convictions for violation of the Sixth Amendment rights at counsel for the trial judge's failure to appoint new counsel prior to the trial. If you were to reward your client for being a difficult client, defense lawyers all over the circuit would taboo our decision. Prosecutors might actually cheer you. They might be willing to take the hit. You're on the right. I mean, with no indication at all, as best I could tell, that there was anything objectively wrong with the lawyer. I mean, yes, he had some health problems, but lawyers have health problems. Once in a while, the judge looked at the situation and said, he's fine to proceed. There's no dispute that he was. The client gave him incredible, incredible help, gave him the lawyer, a very difficult client. This was his third lawyer, am I correct? No, Your Honor, his second lawyer. He was asked in first third. He was asked in first third, so he was now on his second lawyer. I'm just wondering. I don't see anything here whatsoever that would do anything more than simply reward a difficult, obstreperous client for being difficult, obstreperous. But, Your Honor, the argument, our argument is that the Court's inquiry was inadequate, partly because the Court was focusing on the judge's own very high opinion of trial counsel. And the question isn't whether trial counsel could represent him competently. I think that was not the question that the trial court should have focused on. Rather, the Court should have focused on what was the status of the relationship between client and attorney at that point. But it matters a great deal also as to if there were difficulties, what was the source of the difficulties. If the client himself creates the difficulties, that counts. That matters. Is there anything to suggest that the lawyer was not reasonably following up on instruction from the client, or was refusing to meet with him, or was not answering the client's telephone calls or letters or anything of that sort, neglect or anything of that sort? No, but I don't think a defendant should have to establish that his lawyer is neglecting him in order to have new counsel when the client is saying, I can't communicate with this person, our relationship is broken down, because I don't trust him. And he did. Counsel, wasn't the the requirement is that there must be extensive irreconcilable conflict. The irreconcilable part of this, and even the extensive part of this, is what troubles me. Yeah, there were some problems, and there always will be between an attorney and a man. I don't think an attorney and their client ever is going to always see eye to eye. But it strikes me that counsel brought it up, perhaps because, well, because of the letter submitted by his client. But he himself said, you know, this is on again. It's episodic, I think was the term used. How does episodic somehow translate into extensive irreconcilable conflict? Your Honor, I think what happened is actually initially the attorney filed a motion, although it was a rather weakly worded motion, saying my client wants me to ask for new counsel. The court did address that ex parte at a hearing. Excuse me. This is you got to give me a time frame. This was the one that happened two weeks before the trial? Yes, Your Honor. The motion was filed. That's the first motion. Yes. And that one was filed. Go ahead. That one was filed by the lawyer at the client's behest. Yes, Your Honor. Or being meekly. Yes. And the lawyer, it sounded to me like was just being a mouthpiece when called upon to speak for himself. I mean, he was being a mouthpiece in the sense that he was presenting the client's motion, but he did not express a view that he thought the relationship was irreparably damaged. Your Honor, at that point, I think the Court's correct. He did not. However, the trial judge inquired and also made numerous statements to Mr. McDowell with an attempt, I believe, to put his mind at ease, but that attempt had obviously failed because on the morning that trial was to start, trial counsel again raised the issue, although he raised it, it wasn't exactly clear. In fact, the AUSA pointed out to the Court that he wasn't clear exactly what. Here's the problem. I mean, let's say both lawyer and client agree in the end that they don't get along. So what? I mean, do they have to like each other? I mean, the question is not whether they enjoy each other's company, whether they would want to go out to the opera together if they could. I mean, if you have to think about it, there are probably not that many of your own clients that you'd want to do that with. The question is whether they are able to have a meaningful working relationship in trying to present such defense as the client might have, which sometimes is not very much. I mean, there's not much there to defend. I mean, so it sounds to me like the kind of case that this was. Well, but Mr. McDowell felt that he couldn't trust his attorney, that there were other facts that should have been brought up during the trial or during the evidentiary hearings. The other thing that I think happened in this case is that the record. Okay, but yes, let's take that. So he felt one way and his client felt another way. Now, that happens once in a while in a relationship where there are certain decisions that are the client's decisions that the lawyer can't make for him, whether to plead guilty is such a decision, whether to take the stand is such a decision. I forget what the list is, but it's a fairly short list of decisions that the client has absolute veto, and if somehow the lawyer pleads him guilty, let's say, for example, if that were possible, then that's a breach. But ultimately, if we say the lawyer has the say on tactics, including such questions about what objections to make and what evidence to introduce and the like, what have you said more than, you know, they had a different view on this matter, and the guy who had the authority to decide decided. Why is that a breakdown? The lawyer also has a duty to investigate, and I think one thing that the trial judge didn't do at that initial hearing was to fully inquire as to why the facts of the certain police report were not explored more fully, for example, in the evidentiary hearing. What's the worst? Sotomayor In the event, it looks like the trial went down rather smoothly between the two, and if I recall, at sentencing, didn't the client say, you know, really, the attorneys are great, is great. I'm just sort of a jerk, and I'm trying to repair my bad personality. Wasn't there something like that? Well, at that point, he may have felt that he had no choice, because the other choice he didn't have to say that, and he said what everybody knew in the beginning anyway, that he was just being sort of fractious, but actually the attorney was doing a pretty good job for him. But that part of the issue at the second hearing was that trial counsel denigrated, I think, Mr. McDowell in a way that wasn't necessary by portraying him as the source of all of their problems, as someone who had, you know, an uncontrollable anger issue and who was lashing out at everybody. That wasn't necessary, and it also may not have been accurate, but it placed Mr. McDowell in a situation where he was basically having to fend for himself on the motion and then was having to try to show the judge that he wasn't all that bad. And, Your Honors, I would simply submit that in terms of the conflict issue, in terms of the sentencing hearing, that the record isn't sufficient for this Court to review and that the judge did abuse his discretion by simply by failing completely to address Mr. McDowell's request. There are minutes left. Do you want to address the multiple weapons issue? Yes. We'd ask the Court to vacate either count one or count two based on Soskowitz and Wiga, which was clearly established law at the time. But, Katz, the effect of that is a grand total of $100 in a special assessment and otherwise doesn't really have any effect upon the defendant, correct? But, Your Honor, it is another crime. It's another felony that he's been convicted of. And I would submit that that is always a substantial effect on any person. And certainly, the point of our system of the rule of law is that errors like that should not go uncorrect. Why is he entitled to that? The guns were in different locations. Your Honor, the law that was clearly established at the time of his trial was that there had to be a jury finding on that issue. It wasn't charged in the indictment, and it wasn't – it was never submitted to the jury for any findings. And I think in Soskowitz, the government also argued that same thing, and the Court rejected it. I'm sorry, but multiplicitous is a different issue than – than – you said it's multiplicitous. Multiplicitous means that they're charging the same crime twice. That's a different question from the appendix question of who makes the findings. You can't confuse those. They speak to different issues. Let's talk about multiplicitous. These were two guns. One of them was a Magnum, .44 Magnum, which I think is a revolver, right? And then there was a semi-automatic. One was – they were located – one was in the car. The Magnum was found in the car, and the semi was found in the closet. So the two guns found at two different times in two different locations. Why are these multiplicitous? Because, Your Honor, the – the heart of the case law upon which this is based is that the – what Congress was preventing in passing the Federal Felony Possession Statute was the fact of the prohibited person having a – prohibited item having the contraband. It wasn't a question of focusing on how many items of contraband the person had. No. I can understand if you're saying, look, they catch him and he's got three guns on him. And you say, well, the – you know, he's a felon in possession. Well, he's got one gun on him, and he's also a felon in possession. He's got two guns on him. He's got three guns on him. But then they've got – but then they take – you know, they arrest him with those guns, and then they go over to his house, and they found a stash of more guns. To you, any gun that he would have possessed – or they have evidence that three weeks earlier he owned an entirely different gun, and they've got a picture of him holding a Tommy gun, that would be the same thing. But, Your Honor, at the time of his trial, everyone should have certainly have been on notice that under clearly established law of this and other circuits, the government, if they wanted to charge and prove two separate crimes for those two different guns, needed to indict the receiver possession of those under different factual circumstances, and then submit that question to the jury, those questions to the jury. And that wasn't done. The jury instructions did not do that in this case. And so the jury never made those findings, and that's why we're arguing that the counts have to be merged into one count. Okay. Your Honor, the – we also submit that the court exceeded the statutory maximum penalties on counts 1, 2, 3, 4, and 7. But, again, if we reverse and remand, the judge does it right, and you still have 175-month sentence, correct? Total sentence. Well, under our argument that that – You know, you're starting a new issue, and you're way over your time already. Okay. We'd ask the court to find that the sentencing guidelines calculations by the lower court was incorrect, that the court shouldn't have separated the count, the drug count, from the other counts and put them into two groups. And I think that's based on the Fifth Circuit case of United States v. Halton, that basically what happened was that the court enhanced the drug count because of the gun counts and then separated them in two groups and then hit the other. Is there a different harms doctrine? Your Honor, the – Different societal harms doctrine. Running around selling drugs is one kind of harm, and running around being a felon in possession of guns is another kind of harm. Your Honor, under, actually, Guideline 3D1.2, it states that counts do involve substantially the same harm within the meaning of the rule when one of the counts embodies conduct that is treated as a specific offense characteristic in or adjustment to another of the counts. And so that's what I'm arguing, that in the context, narrow context of the rule, that in fact they should be treated as substantially the same harm because the one is being used to enhance the other one. And so that's why they should have been grouped together. And under that – Thank you. We'll hear from the government. Good morning. My name is Gregory Gruber, and I am an Assistant United States Attorney for the Western States today. Your Honor, I think that the court's questions for appellate counsel as to the new counsel question, the motion for a new counsel being denied, really goes to the heart of the matter. Mr. Sena did the best he could with a very, very difficult client who himself, his admitted temper problem caused all the problems that were ever raised in front of the court. The court gave both counsel and the defendant ample opportunity on both occasions to explain any problems, and he addressed everything that was raised. A defendant does not have his choice to his appointed counsel, and this would have been his third appointed counsel if the court had brought in a third counsel, another new counsel. A defendant should not be allowed to dictate to the court when a trial starts and how many attorneys he gets and who they are simply by being difficult with his lawyer or by refusing to communicate with him when there is no objective reason for doing so. And that's what we have here. That's exactly what went on in this case. Moreover, the record shows that the judge did not abuse his discretion in denying the motion because any problems that were brought up on the record to the judge were merely intermittent, and both the defendant and counsel basically minimized the problems. That is, they showed Mr. Sena went through each complaint raised by Mr. McDowell. The court addressed them as being either nondeterminative or not really a problem. And whenever Mr. McDowell was given a chance to say anything else that he had a problem with, he didn't have any other problems. How about the third request? The four sentencing? Yes. Your Honor, I think at that point, I would say of the two, that might be the more troublesome. But let's look at what really happened here. The letter didn't raise any new problems. It merely said the same problem that you've already heard about twice is still going on. But the fact that at sentencing that Mr. Sena indicated that they had, in fact, discussed the PSR, which of course would have been after the verdict, pre-sentencing, shows that they were still talking, and he filed three sentencing memorandums on Mr. McDowell's behalf. So clearly he was still working very hard for him. And the, well, I think that the fact that he raised the issue again really did not cause any problems that should cause this Court to send it back. There was just no reason that it really needed to be addressed again. And, in fact, at the sentencing hearing, Mr. McDowell himself, in his own words, basically minimized the problems. Yeah, we bumped heads a few times. Well, that's not an irreconcilable conflict. That doesn't show that it was a total breakdown, which is what this Court must find really was there in order to reverse. Well, in other words, even though the Court didn't address it, it's really harmless because it's obvious that it was no problem. I would, I think that's right. There was nothing, perhaps the Court should have addressed it, but Mr. McDowell had had every opportunity to speak at the sentencing hearing. He could have raised it himself at that point. I'm not necessarily saying the burden was on him, but he'd shown no compunction before when given a chance to speak to address any matters like that. And, in fact, at sentencing basically said, you know, I do have a temper problem. In fact, I've gotten into anger management courses at the FEC, which basically my lawyer encouraged me to do, and I know I'm bettering myself now. Can you talk about firearms sentencing? I'm concerned, maybe nobody else is, but I'm concerned about, it seems to me that it's virtually admitted in the briefing that the two firearms should not have been charged in two separate counts. And maybe it's multiplicitous, maybe it's something else. But at the end of the day, he's convicted of two counts. Now, assuming for the moment it should have been in one count, I don't quite see how one can justify not staying judgment, withholding judgment and staying sentencing on one of those counts and then seeing what happens in the future, as opposed to sentencing straight up on both counts. So the question is, how can you do that? Well, Your Honor, in retrospect, perhaps count one or count two should have been stayed, as Your Honor is saying, as far as sentencing goes. But in reality, it didn't. As counsel says, it did add a felony charge conviction, another one identical to the first, and it did up the special assessment by $100. Well, it gives them two convictions. And if we know that one of them shouldn't go forward, I don't quite see what the harm there is in the district court, as the Supreme Court and we have said, when you have double jeopardy or two different counts, come to the same thing, the lesser included, you can convict on both, but you've got to hold on one. What's the harm in holding on one? Just staying judgment and saying, if somehow the other one gets overturned, that one's still there as a conviction that you can resentence on. But he's not really convicted yet. I don't – I agree, Your Honor. I don't think there would have been a harm had that happened. But I think the issue we're faced with now is, okay, that didn't happen. Do we need to remand it because of that? Well, Mr. King makes the point that just being convicted of a felony, of two felonies rather than one, has some type of harm. Isn't that enough for us to at least require the procedure that Judge Fernandez has referred to? I don't think it does in this case, Your Honor. It's – it was a second count, but as Judge Kuczynski pointed out, there was a reason to charge it that way. It's not like he was convicted, as His Honor said, of different guns that were on his person. It was charged that way. That was not challenged below prior to now for the multiplicitous argument as to the counts. And I don't think ultimately— No objection below. I'm sorry. Right. So we have to treat this as a plain error if it's error at all. Correct. It also has an effect on the 2K2.1B1 enhancement for three guns, if you're not one of them all. Actually, it wouldn't have an effect on that, Your Honor, I don't believe, because relevant conduct rules would allow the sentencing court to look at however many guns were involved in the overall offense, even if it wasn't a count of conviction. Now, what about the 176 months? I'm sorry? What about the 176 months on – which looks like it's imposed on each of those counts, which, of course, it can't be? Right. Again, why shouldn't – why shouldn't we tell the district court to straighten that up? Well, again, Your Honor, I think if it – if the case had to go back for some other reason, I would agree that would be a good thing to do as long as it was there. I don't think it's necessary in this case, however, because I think it's pretty clear that on remand the judge, based on his comments at the sentencing hearing, would still give 175 months. And the fact— Well, he's got a brilliant new ruling a year from now that knocks out counts count 4, 3, and 7, and 2, and leaves us with count 1. He's got to serve 176 months on count 1? No, he couldn't. And that would be like chain, but that's not what we have here. That would be an over-sentence. Well, you know, some of our other cases, we say general stuff, but if you go back and look at it, the same sentence would apply to – would not be over the maximum on any of the underlying sentences. Right. But here it's way over the maximum. On count 1, if he gets 176 months, we know that's wrong. Correct? 175 months, yes. It would be over – as to any single count, it would be over the statutory max on everything but count 4. Except 4, right? Right. Right. There is one issue, and your time is almost up, but Judge Kaczynski raised a point that I do think needs to be addressed, and that's the number, the enhancement, two-level enhancement under 2K2.1 for having three or more firearms involved in the offense. And, in fact, there's no evidence at all that one of these firearms was involved in interstate commerce. Isn't that a serious problem that we're going to have to remand to at least have the judge resentence after recalculating the guidelines? I don't think so, Your Honor, in this case. And I'm hoping that Your Honor's got the 28-J letter and the cases that I brought in this morning. Actually, I don't, but I'll certainly look at it before. No, I don't either. Okay. What did you do with the Tenth Circuit case? There were two cases, Your Honor, United States v. Campbell, excuse me, from the United States v. Ahmad from the Second Circuit in 2000. Both of those cases would at first blush appear to support the defense's position on that. However, if you look at the cases closely, they are factually distinguishable from Mr. McDowell's case for a couple of reasons. First of all, it is true, in fact, evidence at trial, I brought it out, showed that the PC-40, the AR-15 Olympic Arms semi-automatic assault weapon was manufactured in Olympia, so there was no interstate nexus. There's no dispute on that. However, if you look at Campbell and Ahmad, you'll see that that in and of itself is not determinative here if there was some other Federal offense that would have been chargeable for that AR-15. But wait. So doesn't there have to be some evidence from which the judge can make that conclusion that there was some other chargeable offense, at least make that finding by a preponderance of the evidence? Well, I think the transcript shows that that evidence was brought out. For instance, that it was Doesn't the judge have to make those findings? Do we have a record that the judge made those findings, that there was an independent basis for finding that that firearm was involved in an offense? As far as like being a banned semi-automatic assault weapon, there were not any specific findings as to that effect. There was a jury finding that Mr. McDowell did possess all three of the firearms. But Does it have to be unlawful possession? Correct? Excuse me? Does it not have to be some form of unlawful possession? Yes. And I think when Your Honor gets a chance to look at Campbell and Ahmad, you'll see that those two cases support the government's position here that this was, in fact, an unlawful firearm for him to possess, both under Washington State law, which the only different element was the interstate nexus. And Ahmad goes to that argument, Your Honor. And the fact that it was, even though it wasn't charged as, it was a banned semi-automatic assault weapon. How do we know it was illegal under Washington law? RCW 9.41.040 prohibits a felon from possessing any firearm. The evidence clearly established that it was, in fact, a firearm. This was not presented below. I'm sorry? This was not presented below. It was not argued below. The evidence did come out during the trial that, of course, that he was a felon. That was stipulated, too. And that this was a firearm. There was testimony. It's not in the excerpt record, unfortunately. But there was testimony that each of these did fire a projectile by means of an explosion and, therefore, was a firearm. I don't think it was argued in your brief here. Correct. This is an argument you're standing up now, not made below. It wasn't made in your brief. And you want us to consider it because you're making it now into our argument. By way of distinguishing two Tenth Circuit cases? Second Tenth Circuit, Your Honor. Assuming we don't think that this is a correct way to raise that argument, we decide not to consider that argument. Do you have anything left? My time is up, Your Honor, if the Court has no further questions. Actually, I did have a question. I'm sorry. Assuming that raising an argument for the first time here where you're standing in court is too late. Assuming that's what we do about your argument about state law, is there some other way you wish to justify the third firearm? Well, Your Honor, I would go back to the argument that we did make in our brief at that point and say that despite the government's concession in the other circuit, which is brought up in the Campbell case, we believe that the issue really should be whether there were three firearms. And the evidence clearly showed that there were, in fact, three firearms that met the federal firearm definition. So three firearms don't have to be illegal. There could be two illegal firearms and one legal firearm. Well, in fact, our argument, of course, is that it was an illegal firearm. But, yes, that would be our concession. I'm complicating things by putting that qualifying argument. I've already told you we're presupposing that we're not buying it. Are you just trying to delay things? No, Your Honor. Why don't you just answer the question? I thought I did, Your Honor. Yes, that would be our position. So your position is that even though two were illegal, two were illegal and one were legal, what is your authority for that? Well, unfortunately, Your Honor, other than those new cases, we had thought at the time of the brief that this was really a case of first impression. We couldn't find any other authority, so I don't have any other authority for that position. Well, Counselor, you have authority, at least in the sense of the guidelines. I mean, I don't know if it's Application Note or Commentary 6 says, for purposes of calculating the number of firearms under Subsection B-1, count only those firearms that were unlawfully sought to be obtained, unlawfully possessed, or unlawfully distributed. Doesn't that tell us that they have to be unlawful or they're not to be included? Yes, it would, Your Honor. All right. So you lose on this other argument. If you take the position that those other cases cannot be used, yes, Your Honor, I guess we would. Okay. Thank you. Thank you. That case just – you need to say something? I just wanted to ask if I could make one comment as to the Campbell case, but the Court's not going to consider that. Well, we'll give you 30 seconds. Thank you. In Campbell, actually, with the Tenth Circuit, the strict holding of Campbell is that the relevant question should be whether the possession is unlawful for purposes of Federal criminal law, and I think that that's how the Court should construe 2K21.B, partly because I think that the Court should construe the language of that narrowly in terms of the offense being the offense of conviction, and that would be consistent with the rule of lenity, which also should apply since this is criminal punishment. Thank you. The rule of lenity. Thank you. Thank you. Case is high. We'll send someone. We are adjourned.
judges: Kozinski, Fernandez, Winmill